ABBOTT *v.* WAYNE CIRCUIT JUDGE.

FIELD *v.* WAYNE CIRCUIT JUDGE.

1. RECEIVERS — EQUITY PRACTICE — ABATEMENT — SUIT PENDING—
   DISSOLUTION OF CORPORATIONS.

   After the appointment of a receiver, in a suit instituted
   by the relator as majority stockholder and officer to dis-
   solve a construction company, and after a sale of the
   assets of the defendant corporation named in the bill of
   complaint had been ordered by the court upon the inter-
   vention of a number of creditors who asked for such sale
   of the property, and while other proceedings were pend-
   ing in the principal case, relator filed a bill of complaint
   charging the receiver with bad faith and neglect of duty
   and asking that the suit be consolidated with the other
   proceedings pending. No leave to commence suit was
   obtained from the court which had appointed the receiver.
   On motion of the receiver the bill was stricken from the
   files of the court on the ground that it could not be filed
   without leave of the court and that it unwarrantably
   interfered with the proceedings pending. *Held*, that the
   action of the lower court would not be set aside in man-
   damus, and that no duty was shown requiring the court
   to grant permission to institute the second suit in chan-
   cery.

2. SAME—CORPORATIONS—WINDING UP.

   Also, the lower court was not required to permit the re-
   lator to file an answer in behalf of the defendant corpora-
   tion in the supplementary proceedings in which the cred-
   itors of the construction company had petitioned for dis-
   solution, where the corporation had appeared by its solici-
   tors and filed an answer, and where it was not shown
   that the answer was corruptly prepared or that the solici-
   tors were unauthorized or were acting in bad faith.

3. SAME—APPEAL AND ERROR—STOCK AND STOCKHOLDERS.

   But an order of dissolution and sale of the assets of de-
   fendant was a final order from which stockholders that
   showed cause why the corporation should not be dissolved
   could take an appeal, although the order was entered in

the proceedings for intervention by its creditors, instead
of being made in the proceeding for voluntary dissolution.
3 Comp: Laws, § 10890;  5 How. Stat. (2d Ed.) § 13598.

Mandamus by Charles S. Abbott against Henry A. Mandell, one of the circuit judges for the county of Wayne, to require respondent to set aside an order striking from the files of the court a bill of complaint filed by said Abbott as complainant against H. W. Noble & Company and a number of other defendants.

Also, mandamus by the same relator against Philip T. Van Zile, Wayne circuit judge, to vacate an order appointing a receiver for the Chippewa Construction Company, in voluntary proceedings for dissolution of said company, also, to vacate an order denying relator the right to appeal as one of the stockholders of said defendant from an order of sale of its assets.

*Abbott & Abbott* (*Selling & Brand,* of counsel), for relator.

*Corliss, Leete & Moody, Angell, Boynton, McMillan, Bodman & Turner, Tolles, Hogsett, Ginn & Morley, Chapman, McNamara & Matthews,* and *Chamberlain, May, Denby & Webster* (*Orla B. Taylor* and *R. S. Holbrook,* of counsel), for respondent.

Proceedings in mandamus by Clark C. Field against Philip T. Van Zile, one of the circuit judges for the county of Wayne, to require the respondent to vacate an order striking from the files the claim of appeal of relator from an order in chancery dissolving the Chippewa Construction Company and directing a sale of its assets, and for other relief.

*Moore & Moore,* for relator.

*Angell, Boynton, McMillan, Bodman & Turner* (*R. S. Holbrook* and *Tolles, Hogsett, Ginn & Morley,* of counsel), for respondent.

Submitted June 9, 1914.   (Calendar Nos. 26,045, 26,046, 26,055.)   Writ granted in second and third proceedings above named July 24, 1914.

OSTRANDER, J.   The proceeding first above entitled is an application for a writ of mandamus requiring the respondent to set aside an order striking from the files a bill of complaint filed by relator as complainant against a large number of persons, firms, · and corporations as defendants, to grant relator certain temporary injunctive relief, and to consolidate petitioner's said suit and certain causes and proceedings pending in said court.

In the proceeding second above entitled relator asks for a writ of mandamus requiring the respondent to set aside an order appointing a permanent receiver for the Chippewa Construction Company, an order striking from the files relator's claim of appeal from the order appointing a receiver, and an order directing a sale of the assets of the Chippewa Construction · Company.

The proceeding third above entitled is an application for a writ of mandamus to set aside an order striking from the files relator's claim of appeal from an order (the same order heretofore mentioned) directing a sale of the property of the Chippewa Construction Company, to set aside an order striking from the files relator's claim of appeal from an order appointing a receiver for and sequestering the property of the Chippewa Construction Company, and to vacate and set aside a restraining order by which relator is enjoined from taking further proceedings in connection with his claim of appeal.

Eighteen printed briefs have been filed.   The merits of the contentions are not before us, and yet three printed records of considerable proportions contain the matter brought up, which is arranged, if arrangement was attempted at all, without regard to

the order of events and in such a way as to make an examination of it very laborious.

At some time (I have not found the precise date of the transactions, but probably in the year 1911) two corporations were organized under the laws of this State; one the Consolidated Light & Power Company; the other the Chippewa Construction Company. The capital stock of the Consolidated Light & Power Company was $100,000, the shares of stock being 10,000 in number, the announced purpose being the production and supplying of gas and electricity for lighting, fuel, and other purposes, the subscribers to the capital stock being J. L. Hudson 6,500 shares, F. R. Poss 1,500 shares, R. B. Tannahill 1,000 shares, C. S. Abbott 1,000 shares. A predecessor of this company had acquired certain rights, franchises, and options in connection with the development of a water power on the Chippewa river, and the principal purpose of the above-mentioned corporation was to secure the development of, and to manage and control the sale of, power from works to be established on said river and at other points. The Chippewa Construction Company was organized for development and construction work incident to the general project. Its capital stock was $10,000. Some time in the year 1912, I assume in the month of October, there were filed in the circuit court for the county of Wayne, in chancery, verified petitions for the dissolution of each of these corporations, each of them being signed by Charles S. Abbott, one of the above-named relators, by Robert B. Tannahill and by Frank R. Poss. The petition for the dissolution of the Consolidated Light & Power Company set out, among other things, that the president of the company had deceased, and his successor had not yet accepted office; that Charles S. Abbott was vice president and Robert B. Tannahill secretary and treasurer of the corporation, and, with

Frank R. Poss, constituted the board of directors; that the corporation had partially prosecuted the design upon which it started, "but now finds itself unable to command the necessary additional capital to fully carry out its plans so as to render the project a complete success, and from a considerable part of its property it is unable to obtain revenue because of its inability to develop other property necessary to be used in connection therewith;" that it was engaged in the manufacture and distribution and sale of electricity in a considerable territory, was entirely solvent, with abundant assets to settle all of its obligations; that its total assets exceeded in value $800,000, while its liabilities were about $518,000.

"The assets, however, are of a character which necessarily make their fair realization depend largely upon the continuation of the business and the further development of the enterprise undertaken.

"*Fifth.* Your petitioners further show that they have been in consultation with some of the largest creditors of the company, and have frankly and freely disclosed to them the condition of the affairs of the company, and have asked their advice, and that it is the advice of such creditors that it is for the best interests of all concerned that, under the circumstances, the corporation be dissolved and placed in the hands of a receiver and the business continued under the provisions of law for the purposes mentioned herein.

"*Sixth.* Your petitioners believe and respectfully represent to the court for the reasons herein stated that they deem it beneficial to the stockholders of said corporation that said corporation should be dissolved under the provisions of chapter 300 of the Compiled Laws of the State of Michigan of the year 1897 as amended, so that its assets may be worked out without unnecessary waste or delay for the benefit of the creditors and stockholders. And your petitioners know and positively aver that to shut down the plants of the company and stop its business would be doing the creditors and the stockholders an irreparable injury.

"Your petitioners fear that the filing of this petition and the publication of the order to show cause why said corporation should not be dissolved will very seriously embarrass, if not entirely stop, the carrying on of business and result in the shutting up of the plants of the company unless a temporary receiver shall be appointed by this court pending the hearing upon the dissolution of said corporation and the appointment of a statutory receiver; that it is the desire of your petitioners, as directors of said corporation, and also as stockholders holding a majority of the stock thereof and of creditors holding a large part of the indebtedness of said corporation, that a receiver be appointed for said company for the purpose of preserving its assets and good will and continuing the operations of said company as a going concern so as to secure the payment of all debts in full and a fair return to the stockholders therein."

Attached to the petition were schedules with descriptions of property and valuations, a list of stockholders with the holdings, in which relator Abbott appears as holder of 5,000 shares, from which it further appears that all of the property of the company is subject to a mortgage dated November 4, 1911, to the Detroit Trust Company, trustee, to secure an authorized issue of $2,000,000 30-year 6 per cent. bonds, of which $264,000 had been issued; that the F. Bissell Company, of Toledo, Ohio, was entitled to the net revenues collected by the corporation in the cities of Gladwin, Coleman, and Alma, and the villages of Rosebush and Shepherd. The list of direct claims against the company is not footed in the record, but it appears from it that a considerable number of creditors exist, among them the Chippewa Construction Company, which it owed upon open account $247,399.63.

As above stated, a similar petition for the dissolution of the Chippewa Construction Company was filed, relator Abbott claiming to be holder of 55 per cent. of the stock of that company.

After the filing of these petitions in the matter of the Chippewa Construction Company, and, I assume, in the matter of the Consolidated Light & Power Company, orders were entered October 29, 1912, appointing the Detroit Trust Company temporary receiver, and orders to show cause, before a commissioner, why the corporations should not be dissolved were made, returnable February 3, 1913. The orders to show cause were directed to all persons interested in the corporations. It was further ordered that a copy of the order be published for three weeks, once each week, in a newspaper published in Wayne county. The order appointing a receiver for the Chippewa Construction Company recites matters set out in the petitions, with the finding that:

"It appearing to the court that, pending the hearing of the order to show cause issued upon said petition, it is necessary for the preservation of the assets of the company and the protection of the interests of creditors and stockholders that a temporary receiver be appointed as asked for in said petition."

The receiver is ordered to take possession of all property, collect outstanding bills and accounts, conduct the business as a going concern to such an extent as it may deem advisable, and for that purpose buy materials and incur other expenses, sell and dispose of perishable property, make an inventory and appraisal of assets and statement of claims and demands against the company, and report the same to the court. It is given leave to borrow or advance a sum not exceeding $10,000, and repay it, with interest, out of moneys coming into its hands. In each case the corporation, its officers and agents, are ordered to deliver to the receiver possession of all property and effects. In this way the relator Abbott sought and obtained the intervention of a court of equity in the affairs of these concerns, asking that they be dissolved. Various orders were made at the instance of

the receiver.   December 27, 1912, a petition was filed by an attorney for 62 laborers, asking leave to levy execution on the property of the construction company.   It was noticed for January 2, 1913, and on that day was continued to January 11th.   On January 11th the receiver asked for leave to issue $21,000 of receiver's certificates to pay labor claims, etc.   Upon this petition Judge Codd made an order to show cause and an order requiring proof of labor claims.   Without reciting in detail the proceedings, it appears that on January 25th a summary inventory and appraisal was filed, and the petition for leave to issue receiver's certificates was heard and granted.

On January 28, 1913, relator Abbott, claiming to be a majority stockholder of both of said corporations, filed identical petitions in the respective proceedings for dissolution, praying for a six-months postponement of hearing upon the orders to show cause for the purpose of further opportunity to obtain funds to complete and put into operation a certain dam.   These petitions were denied February 1, 1913, after a hearing by Judge Codd.   March 5, 1913, two persons, representing that they were judgment creditors of the Chippewa Construction Company and that executions to collect the judgment had been returned unsatisfied, asked for leave to intervene in the proceedings for dissolution in behalf of themselves and other creditors.   On the same day an order was entered granting them leave to intervene, and that upon such intervention process issue requiring the Chippewa Construction Company to appear and answer the interveners' petition.   The bill filed by these creditors charged that they had recovered judgments in justice's court, respectively, for $106.05 damages and $3.85 costs, and for $97.20 damages and costs, had caused executions to be issued to collect the same, placed them in the hands of the sheriff, and they had been returned unsatisfied and the judgments remain-

ed unpaid; that the judgments were for labor claims, and that there were other judgments against the Chippewa Construction Company for labor performed for it, aggregating $2,000, upon some of which executions had been issued and not returned; that (upon information and belief) there were other claims for labor against the said corporation amounting to $10,000. Various facts, necessary to be set out in a judgment creditor's bill, are charged, with the fact that the court had possession through its receiver of the assets of the corporation. The prayer of the bill was that it might be treated as an intervening petition in the proceedings to dissolve the corporation, that the court sequester the stock, property, things in action, and effects of said corporation, and apply the same to the payment of the indebtedness due complainants and other creditors; that a receiver be appointed, etc., etc.

By its secretary and treasurer the defendant Chippewa Construction Company answered the bill, admitting most of the charges therein. This answer was filed March 13, 1913. Later, March 29, 1913, a paper called a demurrer, entitled in the dissolution proceedings, was filed by relator Abbott as "one of the respondents in the above-entitled matter," who sets out his reasons for refusing to the said judgment creditors the right to intervene in the said dissolution proceeding. On the same day that it was filed relator Abbott filed a personal answer in the matter of the dissolution proceedings, setting out that the Chippewa Construction Company ought not to be dissolved because:

(1) It is not insolvent; (2) a dissolution would not benefit stockholders; (3) would be injurious to stockholders; (4) would not benefit creditors; and (5) would injure creditors; (6) would be injurious to the public interest, etc., etc.

March 22, 1913, relators Abbott and Field filed a paper in the proceedings for the dissolution of the

Chippewa Construction Company purporting to be the answer of the company and of Abbott and Field individually. The answer of Abbott and Field for themselves and (purporting also to be) for the Chippewa Construction Company was on motion stricken from the files, because they (Abbott and Field) had not obtained leave to appear in the cause as stockholders and answer the bill. Abbott thereupon, in open court, asked for leave to intervene and refile said answer, which the court denied, for the reason that intervention and answer on behalf of stockholders in the matter of intervening judgment creditors would be irregular and unnecessary, and that the answer presented consisted "largely of matters impertinent and in no way relevant to the issue upon such judgment creditor's bill." March 29, 1913, an order was entered appointing the Detroit Trust Company (the receiver appointed in the proceedings to dissolve the corporations) receiver in the intervening judgment creditor's proceeding and sequestering the property of the Chippewa Construction Company, with leave to all creditors to appear and present claims and become parties to the proceeding. From this order, on May 6, 1913, relator Abbott filed a claim of appeal. A claim of appeal was also filed on behalf of relator Clark C. Field, and both were stricken from the files.

The orders to show cause why the corporations should not be dissolved were returnable February 3, 1913. There were various appearances on that day, and, upon the request of the solicitor for relator Abbott, the hearing was adjourned to February 7, 1913, when the taking of testimony was begun in behalf of relator Abbott, and was continued from time to time; the last testimony in his behalf and in behalf of relator Field being taken April 11, 1913. No one else desiring to show cause, the proofs in their behalf were declared closed. An adjournment was taken to April 22, 1913. No further testimony was taken, although

hearings were continued from time to time until January 31, 1914. It does not appear that the testimony taken has been reported to the court or that the court has made any order dissolving or refusing to dissolve either of said corporations.

Under date September 15, 1913, the intervening judgment creditors of the Chippewa Construction Company filed a petition asking for an order directing the receiver to sell the assets of that company at public auction and to apply the proceeds: First, to pay the expenses of administration; second, to pay all labor claims in full, with interest; third, to divide the remainder among all general creditors of the corporation. The receiver answered this petition and repre-. sented that the labor claims filed with the receiver amounted to $12,885, in addition to one for $8,000 filed by one Townsend; that other claims against the corporation, secured and unsecured, amounted to $475,000 and upwards; that by direction of the court the receiver had sold certain personal property of the corporation, receiving therefor $1,824.21, and had been unable to make further sales; that the issue of receiver's certificates authorized by the court found no market; that the National Pole Company on September 3, 1913, filed its bill as a judgment creditor of the Consolidated Light & Power Company, and that by decree of the court (Wayne county circuit court, in chancery) the property of that corporation had been sequestered and the Detroit Trust Company appointed receiver thereof; that the two corporations named were engaged in a common project, and the value of the assets of each depended to a large extent upon connection with the assets of the other; and that a sale of the assets of both should be made so that both properties might be secured by the same bidders. On November 12, 1913, an order was entered for a sale of the assets of the Chippewa Construction Company to be made January 13, 1914.

November 13, 1913, relator Abbott filed the sworn bill of complaint hereinbefore mentioned. Among the numerous parties made defendants therein is the Detroit Trust Company, and it is charged that, as receiver of the said corporations, it had been derelict in performing its duty, and has acted in bad faith as such receiver. The Detroit Trust Company moved to quash the process issued when the bill was filed and to strike the bill from the files for the reasons:

(1) That it was filed against it in its capacity as receiver without leave of the court; (2) bringing the said bill against it as receiver amounted to an unwarranted interference with the orderly administration of justice by said court in a suit pending therein and described in said bill, and was in contempt of the court.

Two other similar motions were made by the Detroit Trust Company, and, coming on to be heard before Judge Mandell, were granted.

What has been so far disclosed is a small part only of the matter which has been brought upon the record. Relator Abbott, as codefendant with the Williamston Illuminating Company, has been sued, a judgment recovered, his stock in the two corporations involved in this proceeding has been taken on execution and sold at public auction. The return of the sheriff of Wayne county to this effect was made June 13, 1913. Relator Abbott's rights as stockholder in either corporation— at least the nature and extent of his rights—are questioned in another proceeding. It is true that Abbott questions the conclusiveness of the sale of his stock and asserts that he had notice neither of the levy nor the sale.

It is made to appear that after filing the petitions for dissolution of the corporations, and on April 14, 1913, relators Abbott and Field filed a bill in chancery in the Wayne circuit court against the executors of the estate of J. L. Hudson and others, in which

suit it was denied by the defendants that Abbott was holder of stock in said corporations to the amount he claimed. There is pending in the same court a suit in which Abbott and other stockholders of said corporations are defendants, in which is involved the right of relator to the stock held by him in said corporations.

The bill of complaint which was filed by relator Abbott and was stricken from the files, treated as a pleading, is unique. It purports to be a history of his connection with, and efforts in behalf of, the corporations involved, and the manner in which, and the methods by which, his efforts to secure a successful existence for them have been thwarted by the persons, firms, and corporations with whom he has dealt or has sought to deal. It is a tale of perfidy and of conspiracy, of which he is the victim. He asks that all of the proceedings begun by him and by others in relation to said corporations and those involving his ownership of stock in them be consolidated and heard together; that much that has been done be undone; and that the court shall manage in some way to pay the debts and secure the continued existence of the said corporations to the end that his interest in them may be made of value. The corporations involved were insolvent, when petitions for their dissolution were filed, in that they were unable to pay their debts as they matured in the regular course of business. Being insolvent, and there being hope that financial aid might be secured if time was allowed, the aid of a court of equity was sought, not in good faith to dissolve, or not dissolve, the corporations as conditions should require, but to secure protection from the assaults of creditors whose demands were pressing. So much is manifest. It is true that relator Abbott now contends that he was forced, cajoled, or seduced into participation in the proceedings to dissolve, but he says that a bankruptcy proceeding was the alter-

native—a fact which is also manifest. Protected by the arm of the court, he still failed to secure the financial assistance required, mainly, he claims, on account of the bad faith and dishonest motives of all, or nearly all, of those whose interests were directly or indirectly involved, or whom he sought to interest. A receiver was seeking (though, he says, not in good faith) to conserve (or not to conserve) the property and continue the corporations in operation. A swarm of creditors, denied relief in the usual forums on account of the receivership, brought their grievances to the attention of the court whose officer the receiver was. They were permitted to intervene. We are not called upon to decide whether, in such a case as this one is, a court of equity may not dispose of the entire assets of a corporation at the instance of creditors who have intervened, without determining whether, otherwise, the corporation ought to be dissolved. Coming to the questions which are presented for decision, it does not appear to be the plain legal duty of the court below to permit relator Abbott to file his bill, upon which no relief can be granted without halting all proceedings directly or indirectly connected with the original proceeding instituted by relator Abbott, and re-examining all questions, or nearly all of them, heretofore determined. It is not the plain legal duty of the trial court to permit relator Abbott to file an answer in the original or supplemental proceeding for himself, for Field, and for the Chippewa Construction Company, there having been an answer put in by the Chippewa Construction Company, by its accredited solicitors, and it not being made to appear that the answer was corruptly filed or by persons not, in fact, the accredited representatives of the corporation. It is not the plain legal duty of the trial court to consider the demurrers and other pleadings of relators, in the original or the dependent creditors' proceedings. Neither relator has attempted, in either proceeding,

by motion, or by petition, to advise the court that he has a distinct interest to protect which he ought to be permitted to intervene. Nor is our attention directed to any document or pleading, produced to the court below, circumstantial and verified, which advises the court that the interests of stockholders generally, or of creditors, is jeopardized or affected by the conduct of persons, solicitors, or others representing interests upon the record.

But whether a stockholder of a corporation seeking voluntary dissolution, who has appeared and shown cause against dissolution, may not appeal from an order, entered in a dependent intervention proceeding, for the sale at auction of all of the assets of the corporation, is a different question. It is a final order. *Webber* v. *Randall*, 89 Mich. 531 (50 N. W. 877). It is entered in the dependent intervention proceeding, but nevertheless disposes of the assets of the corporation which initiated the original proceeding. The statute (3 Comp. Laws, § 10890; 5 How. Stat. [2d Ed.] § 13598 [a part of chapter 300]) provides that:

"Any corporation, person or persons claiming to be aggrieved by any decree or final order of any circuit court in chancery in any proceedings mentioned in this chapter, may appeal therefrom to the Supreme Court."

This express statute right of appeal, we think, should not be denied because the order appealed from was not strictly an order entered in the dissolution proceeding. It ends that proceeding when a sale is made and the proceeds of it are distributed.

We are of opinion that motions No. 122 and No. 123 should be granted.

MCALVAY, C. J., and BROOKE, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.